UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION


MSP RECOVERY, LLC,                                   CASE NO. 1:15-cv-20788-PAS

    Plaintiff,

vs.

ALLSTATE INSURANCE COMPANY,

    Defendant.

_____/

## <u>DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT AND ACCOMPANYING MEMORANDUM OF LAW</u>

Defendant, Allstate Insurance Company ("Defendant" or "Allstate"), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), respectfully requests the Court enter an order dismissing the claims of MSP Recovery LLC ("Plaintiff"). Aware of the weaknesses in its original Complaint, Plaintiff has now filed an Amended Complaint. The Amended Complaint allegations, however, fare no better. Plaintiff lacks standing to bring this action, and, in all events, Plaintiff's claims based the Medicare Secondary Payer Act fail as a matter of law. Plaintiff's "breach of contract" claim fails because it has not alleged any facts establishing an assignment of rights under any Allstate insurance policy. In addition, Plaintiff fails to state a claim for an "accounting," and its declaratory relief claim falls with its substantive claims. The reasons for Allstate's Motion are fully set forth in the accompanying Memorandum of Law.

## MEMORANDUM OF LAW

### ALLEGATIONS OF AMENDED COMPLAINT

The Amended Complaint ("Am. Compl.") alleges Plaintiff is the purported assignee of La Ley Recovery Systems ("La Ley"), which, in turn, is the purported assignee of Florida Healthcare Plus ("FHCP"). FHCP is alleged to be a Health Maintenance Organization and a Medicare Advantage Plan ("MAO"). (Am. Compl., ¶¶ 8-11.) According to Plaintiff, Allstate was a primary payer obligated to pay for medical services for a patient (referred to as "Enrollee," "D.Y.") who is allegedly also an Allstate Personal Injury Protection ("PIP") insured. FHCP allegedly paid Medicare benefits on behalf of the subject patient. (Am. Compl., ¶¶ 4-5, 10-24.)

Plaintiff alleges that on August 8, 2014, its counsel sent a letter to Allstate advising of FHCP's rights as an MAO and FHCP's notice of lien pursuant to the Medicare Secondary Payer Act ("MSP"). (Am. Compl., ¶¶ 18-19.) Plaintiff alleges FHCP, and Plaintiff as its alleged assignee, is entitled to recover and be reimbursed by Allstate for the amounts Allstate has allegedly failed to pay for this patient. (Am. Compl., ¶¶ 12, 20-24.)

According to Plaintiff, Allstate has failed to make payments as a primary payer under the MSP and otherwise failed to reimburse FHCP. (Am. Compl., ¶¶ 23-24.) Plaintiff asserts four counts. In Count I, Plaintiff seeks a "Declaratory judgment as to Defendant's obligation to Reimburse Medicare Benefits." (Am. Compl., ¶¶ 61-65.) In Count II, Plaintiff asserts a "Private Cause Of Action For Double Damages" under the MSP, 42 U.S.C. § 1395y(b)(3)(A). (Am. Compl., ¶¶ 67-76.) In Count III, Plaintiff asserts an "Action for Accounting," seeking an equitable accounting of the amounts Allstate allegedly owed as a primary payer. (Am. Compl., ¶¶ 77-82.) In Count IV, Plaintiff asserts a claim for "Breach of Contract Pursuant to Section 627.736, Florida Statutes," seeking PIP benefits pursuant to an insurance contract which

allegedly provided coverage to "D.Y," as well as attorneys' fees and costs pursuant to Section 627.428.  (Am. Compl., ¶¶ 83-88.)

## LEGAL STANDARDS

Dismissal under Rule 12(b)(6) is warranted where a complaint fails to state a claim upon which relief may be granted.  The sufficiency of Plaintiff's Amended Complaint must be assessed in light of the requirements of Federal Rule of Civil Procedure 8 and the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 570 (2008), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Under Rule 8, a pleading "must contain . . . a short and plain statement of the grounds for the court's jurisdiction, [and] . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(1)-(2).  Under Rule 12(b)(6), dismissal should be granted if the plaintiff fails to make factual allegations that are "enough to raise a right to relief above the speculative level," and are sufficient to show "a plausible entitlement" to recovery under a viable legal theory.  *Twombly*, 550 U.S. at 555, 559. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citations omitted).  Rule 12(b)(1) also allows a defendant to seek dismissal based on a plaintiff's lack of standing.  *Medimport S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302, 1312 (S.D. Fla. 2013).

## ARGUMENT

### I.    The Amended Complaint Should Be Dismissed Based upon Plaintiff's Lack of Standing to Sue.

"[S]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims."  *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (citation and internal quotation omitted).  "The essence of a standing

question is whether the plaintiff has alleged . . . a personal stake in the outcome of the controversy[.]"  *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994).  *See also Bostwick v. SMH (US) Inc.,* No. 1:97CV3074TWT, 1998 WL 934642, *2 (N.D. Ga. Oct. 30, 1998), *aff'd sub nom. Bostick v. SMH (US), Inc.*, 228 F.3d 413 (11th Cir. 2000) (the "threshold question to be addressed is whether the Plaintiff has a cognizable claim, that is, an individual who has constitutional standing to raise the claim . . . . This means that she must have a personal stake in the outcome of the controversy.") (citations and internal quotations omitted).

Under Florida law, in order to receive funds arguably due another, the plaintiff must have some form of assignment vesting such a right in that plaintiff.  *See, e.g., Hartford Ins. Co. of Se. v. St. Mary's Hosp., Inc.,* 771 So. 2d 1210, 1212 (Fla. 4th DCA 2000) ("Without any evidence that Garcia assigned his right to PIP benefits to St. Mary's, there is no genuine issue of material fact concerning whether there was an assignment.  Therefore, St. Mary's does not have standing to bring suit against Hartford[.]"); *Progressive Exp. Ins. Co. v. McGrath Cmty. Chiropractic*, 913 So. 2d 1281, 1285 (Fla. 2d DCA 2005) ("For a medical provider to bring an action for PIP benefits, the insured must assign his or her right to such benefits under the policy to the medical provider. * * *  Thus the assignment of PIP benefits is not merely a condition precedent to maintain an action on a claim held by the person or entity who filed the lawsuit.  Rather, it is the basis of the claimant's standing to invoke the processes of the court in the first place.").  *Cf. Magner Int'l Corp. v. Brett*, 960 So. 2d 841, 845 (Fla. 4th DCA 2007) (finding valid assignment was made pursuant to an agreement, "giving [plaintiff] standing to enforce the covenant not to compete."); *Progressive Exp. Ins. Co. v. Hartley*, 21 So. 3d 119, 120 (Fla. 5th DCA 2009) (where insured's assignment to medical provider was invalid, insured retained rights to claim PIP benefits due under his insurance policy).

Plaintiff quotes what purports to be an agreement in which FHCP "assigned to La Ley Recovery claims to recovery amounts owed to FHCP." (Am. Compl., ¶ 5.) However, both the quoted language and the language in the redacted document attached to the Complaint as Exhibit A are ambiguous regarding what is being assigned. The quoted language states "[FHCP] appoints, directs and otherwise assigns all of [FHCP's] rights as it pertains to the rights pursuant to any plan, State or Federal statute whatsoever directly and/or indirectly for any [sic] its members and/or plan participants." (*Id*.). There are simply no non-conclusory allegations whatsoever to support the existence of any assignment of rights related to the claimed amounts for services provided to the patient at issue here, "D.Y." *See, e.g., Sanctuary Surgical Ctr., Inc. v. Aetna, Inc.*, No. 11-80799-CV, 2012 WL 993097, *2 (S.D. Fla. Mar. 22, 2012) (noting medical providers may have standing to sue under ERISA plans by obtaining a written assignment from beneficiaries, and dismissing ERISA claim where [as here] "Plaintiffs allege that '[e]very patient  covered by Aetna assigned to Plaintiffs benefits to which the patient was entitled under his or her insurance policy, including (but not limited to) the right to receive directly from Aetna payments to which the patient was entitled under the terms of the policy,'" because "this allegation is insufficient, as it does not establish a 'written assignment'"; further stating "without access to the language of the assignments, the Court cannot evaluate their legal effect. Thus, even if the Court were to accept Plaintiffs' allegation that the assignments conveyed the right to receive payments, Plaintiffs have not demonstrated [their] standing to sue for equitable relief."); *Cooper v. Southwest Marine & Gen. Ins. C*o., No. 2:13-CV-1651-KOB, 2014 WL 769394, *9-10 (N.D. Ala. Feb. 26, 2014) (granting motion to dismiss; noting that while "plaintiff claims in its response that National Claim Services is liable as an assignee of the

breached contract, the plaintiff fails to allege any facts in the amended complaint that show an actual assignment of rights or duties to any agent occurred.").

While the Complaint alleges that "La Ley assigned to Plaintiff rights it has related to the claims of member, D.Y.," there are only conclusory allegations, based on the above-mentioned assignment language quoted in the Amended Complaint and attached thereto as Exhibit A, that La Ley had any such rights to assign. Plaintiff alleges "FHCP, La Ley Recovery, and MSP will collectively be referred to as 'Plaintff,' as MSP recovery now stands in the shoes of FHCP and La Ley Recovery" as to amounts allegedly owed to FHCP. (Am. Compl., ¶ 12.) But this bald allegation accomplishes nothing. Merely lumping these entities together in this fashion only underscores the fact that Plaintiff has failed to allege sufficient facts establishing a valid assignment from FHCP to La Ley, for purposes of La Ley's assigning any rights to Plaintiff, related to patient "D.Y."

In short, Plaintiff has failed to allege any facts demonstrating Plaintiff's standing. Plaintiff's conclusory allegation that it is an "assignee" is simply not enough to "to raise a right to relief above the speculative level," hence is fatally deficient under *Twombly*. 550 U.S. at 555. Dismissal of Plaintiff's Amended Complaint is warranted on that ground alone.

## II. Plaintiff's Claim for a "Private Cause of Action" under the MSP Statute (Count II) Fails as a Matter of Law.

The Medicare Act (codified as 42 U.S.C. §§ 1395 – 1395kkk-1) was amended when Congress created the MSP statute. The intent behind the MSP statute was to make Medicare insurance secondary to any primary plan that must pay for a Medicare recipient's medical expenses. 42 U.S.C. § 1395y(b)(2)(A). So, if Medicare were to make a "conditional" (primary) payment on behalf of a Medicare recipient, the primary plan would be required to reimburse the

government via the Medicare Trust Fund. 42 U.S.C. § 1395y(b)(2)(B)(ii). The MSP also provides the government with the right to recover double damages from a responsible entity refusing to reimburse the Trust Fund. 42 U.S.C. § 1395y(b)(2)(B)(iii). In addition, the MSP includes a private cause of action for double damages, as set forth in 42 U.S.C. §1395y(b)(3)(A). This statute provides, in pertinent part:

> (3) Enforcement
>
>> (A) Private cause of action
>>
>> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

42 U.S.C. §1395y(b)(3)(A).

The private cause of action "allows Medicare beneficiaries and healthcare providers to recover medical expenses from primary plans." *Parra v. PacifiCare of Arizona, Inc.,* 715 F.3d 1146, 1152 (9th Cir. 2013). In *Glover v. Liggett Group, Inc*., 459 F.3d 1304 (11th Cir. 2006), the Eleventh Circuit considered when a private cause of action may be asserted under the MSP. The Court explained: "About a primary plan's duty to reimburse Medicare, the MSP says the following things: 'A primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service *if it is demonstrated that such primary plan has or had a responsibility to make payment* with respect to such item or service.'" *Id.* at 1308 (quoting 42 U.S.C.A. § 1395y(2)(B)(ii)) (emphasis Court's). The court noted the MSP further states: "A primary plan's *responsibility for such payment may be demonstrated by* a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim

against the primary plan or the primary plan's insured, or by *other means.*"  *Id.*  The Court held a primary plan cannot "fail" to pay "in accordance with paragraph[ ] ... (2)(A)" of Section 1395y – and, thus, cannot be liable under the private cause of action – unless its responsibility to pay for the treatment has been demonstrated.  *Id.* at 1308-09 (further stating: "When Plaintiffs filed their MSP claim, Defendants' responsibility to pay for items or services had not yet been "demonstrated," which is a condition precedent to Defendants' obligation to reimburse Medicare under section 1395y(b)(2)(B)(ii).   Until Defendants' responsibility to pay for a Medicare beneficiary's expenses has been demonstrated (for example, by a judgment), Defendants' obligation to reimburse Medicare does not exist under the relevant provisions.   Therefore, it cannot be said that Defendants have 'failed' to provide appropriate reimbursement.")

Similarly, in *Stalley ex rel. U.S. v. Catholic Health Initiatives*, 458 F. Supp. 2d 958 (E.D. Ark. 2006), *aff'd sub nom. Stalley v. Catholic Health Initiatives*, 509 F.3d 517 (8th Cir. 2007), the court held that the plaintiff, who brought an action on behalf of the United States against health care providers seeking to recover monies allegedly owed Medicare, failed to state claim under the MSP where the plaintiff failed to allege facts establishing the defendants' responsibility for payment.   The Court explained that the defendant's responsibility for payment of a Medicare beneficiary's medical costs must be demonstrated before an MSP private cause of action for failure to reimburse Medicare can properly be brought under section 1395y(b)(3)(A): "That is, the defendants' responsibility to pay for items or services must be demonstrated as a condition precedent to their obligation to reimburse Medicare under § 1395y(b)(2)(B)(iii)."  *Id.* at 963-64 (*citing Glover*).

In *Brockovich ex rel U.S. v. Scripps Health*, No. 06-CV-1569WNLS, 2006 WL 4484161, *5 (S.D. Cal. Nov. 7, 2006), the court explained "Congress enumerated two ways to demonstrate

responsibility to pay:  a judgment and 'a payment conditioned upon the recipients' compromise, waiver, or release,' *i.e.*, a settlement.  In both of these situations, the primary plan's obligation to pay is established, whether by adjudication or agreement of the primary plan, *before* the MSP action is filed, and with respect to *particular* expenses.  Therefore, 'by other means' includes other instances of like kind where there is a previously established requirement or agreement to pay for specific medical expenses Medicare conditionally paid for."  (Emphasis in original.)  The court further stated:  "Nothing in the Court's ruling requires an MSP claimant to demonstrate responsibility to pay under any particular theory of liability.  Rather, the MSP requires that the evidence demonstrating responsibility to pay exist *before* a claimant files an MSP action, and be *specific and identifiable*, because those are the common, limiting features of the means Congress enumerated."   *Id.* (emphasis in original).   Because the plaintiff failed to allege facts demonstrating responsibility to pay, the court held she failed to state a claim under the MSP.  *Id. See also In re Guidant Corp. Implantable Defibrillators Products Liab. Litig.,* 484 F. Supp. 2d 973, 981 n. 3 (D. Minn. 2007), *order amended on reconsideration on other grounds*, No. MDL 05-1708 DWF/AJB, 2007 WL 2028137 (D. Minn. May 9, 2007) (finding *Glover*'s "reasoning persuasive"; stating "if Ivens had standing, her MSP claims would nonetheless fail because Guidant's responsibility to reimburse Medicare has not yet been determined."); *National Renal Alliance, LLC v. Blue Cross & Blue Shield of Georgia, Inc.,* 598 F. Supp. 2d 1344, 1354 n. 5 (N.D. Ga. 2009) (in finding plaintiffs could not bring private cause of action under MSP, noting: "Nor have Plaintiffs alleged that Blue Cross has a 'demonstrated responsibility' to pay greater than Blue Cross's reimbursement to Plaintiffs."); *Fresenius Med. Care Holdings, Inc. v. Brooks Food Grp., Inc.,* No. CIV.A. 3:07CV14-H, 2007 WL 2480251, *8 (W.D.N.C. Aug. 28, 2007) (dismissing MSP claim; noting the "MSPA makes it a condition precedent to reimbursement that

there be a "demonstrated" responsibility to pay for items or services," and holding "there has clearly been no finding at this time of the Defendants' responsibility for the contested payments. If and when such a determination is made, the Defendants should understand their responsibility to reimburse Medicare for funds which otherwise would not have been paid on Ms. Kirkpatrick's behalf.  If, at that time, the Defendants fail to reimburse the appropriate funds, then the MSPA allows for a private cause of action for double damages."); *Larson v. Liberty Mut. Fire Ins. Co*., No. CIV. 09-00308 SOM/BM, 2010 WL 1962942, *4 (D. Haw. May 13, 2010), *aff'd*, 509 F. App'x 641 (9th Cir. 2013) ("To the extent the Amended Complaint seeks to add a claim under the [MSP], asserting that Liberty Mutual should have provided primary insurance coverage, the amendment would be futile because Larson's allegations, even if true, do not 'demonstrate' Liberty Mutual's responsibility for payment for items or services, which is a condition precedent to a § 1395y private cause of action.").

   *United States ex rel. Mason v. State Farm Mutual Automobile Insurance Co*., No. CV07–297–S–EJL, 2009 WL 2486339 (D. Idaho Aug.13, 2009), is also instructive.  There, the court dismissed the plaintiff's claims against an automobile insurer, State Farm, alleging State Farm avoided its obligation to pay under its insurance policy and to reimburse Medicare for medical charges plaintiff incurred in an automobile accident.  State Farm disputed that it knew the hospital "had billed Medicare or that Medicare had paid the bill," and asserted "the allegation that it should have known is unsupported."  *Id., *3.  State Farm argue[d] its obligation to reimburse Medicare arises if and when the liability of State Farm as the primary payer is established not, as Plaintiffs argue[d], when the insurer makes a partial payment."  *Id.  The court

reasoned that "any duty [the insurer] had to reimburse Medicare did not arise at the time [the hospital] submitted its claim to Medicare[.]" *Id.,* \*6.[1]

Applying the above case law here, Plaintiff's Amended Complaint is devoid of any allegation demonstrating Allstate's responsibility to pay anything.  The Amended Complaint merely conclusorily alleges that "Plaintiff," presumably referring to FHCP, paid for medical expenses for the Enrollee, and that Plaintiff's attorney then demanded reimbursement from Allstate.  (Am. Compl., ¶¶ 13-20.)  Plaintiff alleges because Allstate failed to pay as a primary payer it is now required to pay twice the amount that FHCP charged the Patient – *i.e.,* $2,869. (*Id.,* ¶¶ 20-23.)  Yet, to obtain reimbursement under the MSP statute, Plaintiff would have to show Allstate was in fact required to pay the medical charges at issue and that these charges were covered in the first instance under the applicable Allstate insurance policy and the Florida PIP statute.

There are many reasons Allstate may have no responsibility to pay, including that the PIP coverage was exhausted by other payments or the charges were not reasonable or related to the accident.  *See, e.g., United Auto. Ins. Co. v. Millennium Diagnostic Imaging Ctr., Inc*., 12 So. 3d 242, 245 (Fla. 3d DCA 2009) ("If a medical bill is submitted for treatment that is not reasonable, related, or necessary, there can possibly be no benefits 'due' under the policy, and therefore, that claim cannot be deemed 'overdue.'")  It is simply not enough, under *Twombly,* to allege that Allstate is a PIP insurer and therefore it must pay.  Unless Plaintiff alleges facts showing Allstate

---

[1] While *Mason* was based on claims brought under the Federal False Claims Act, 31 U.S.C. § 3729 et seq., the court noted that the MSP dictated those claims regarding Medicare reimbursement, and indicated that something more than the existence of an insurance contract, or the submission of a claim for benefits, is required to establish the insurer's duty to reimburse Medicare.  2009 WL 2486339, \*5-6.

in fact had an obligation to pay, which it simply has not done, it cannot assert a claim based on

FHCP's alleged status as a secondary payer under the MSP.

It should be noted that some courts in other jurisdictions have opined that *Glover*'s

reasoning applies only to tortfeasors. *See, e.g., Bio-Medical Applications of Tenn., Inc. v.

Central States Health and Welfare Fund*, 656 F.3d 277, 290-91 (6th Cir. 2011). However,

*Glover* is controlling in this jurisdiction, so, as one court explained, *Glover* cannot be read as

being limited to tort claims, as opposed to other actions, such as actions on an insurance contract:

> Because she had a contractual relationship with Clarendon, Fisher
> argues, she can demonstrate Clarendon's responsibility to pay "by
> other means." However, the *Glover* court's analysis of the "by
> other means" clause is much broader than just the tort context:
> "The 'by other means' language in section 1395y(b)(2)(B)(ii)
> encompasses other instances of 'like kind' where there is a
> previously established requirement or agreement to pay for
> medical services for which Medicare is entitled to be reimbursed,
> which instances Congress chose not to try to exhaustively
> enumerate." *See id.* at 1291.

*Fisher v. Clarendon Nat. Ins. Co.,* No. 07-4092CVCNKL, 2008 WL 191813, *2 (W.D. Mo. Jan.

18, 2008).

This explanation of *Glover* makes sense. The Eleventh Circuit in *Glover* explained that

its conclusion that section 1395y(b)(3) did not create a private cause of action where the

"responsibility for payment of medical costs has not been previously established" was supported

by additional considerations, including: "under Plaintiffs' interpretation, an alleged tortfeasor

that is sued under the MSP . . . could not contest liability without risking the penalty of double

damages: defendants would have no opportunity to reimburse Medicare *after* responsibility was

established but before the penalty attached." 459 F.3d at 1309 (emphasis in original).

This reasoning applies with equal force to the PIP context. If any professed "secondary payer" could force a PIP insurer into court under the guise of a purported MSP claim without demonstrating in the first instance that the PIP insurer has responsibility to pay the claimed charges, that would turn any garden variety PIP claim into an MSP action.

Moreover, the MSP statute comes into play only where a conditional payment by a secondary payer is made. *See* 42 U.S.C.A. § 1395y(b)(2)(B)(ii) (referring to "conditional payments"; stating a "a primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for **any payment made** by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service.") (emphasis added). There must have been a conditional payment in the first instance before any right to reimbursement from a purported primary payer can arise.

Plaintiff conclusorily alleges "Plaintiff has complied with all the conditions precedent" to bringing this action, that "Plaintiff" "ma[de] prompt, conditional payments to Enrolles's providers," and that FHCP made payments in the amount of $2869.00. (Am. Compl., ¶¶ 6, 17, 20.) However, Exhibit F to Plaintiff's Amended Complaint, which purports to be a "demand letter" from a law firm for "La Ley Recovery Systems - FHCP" to Allstate (which is part of a group exhibit that includes Plaintiff's original Complaint) which this Court may consider on a motion to dismiss,[2] indicates "$0.00" was paid to the medical providers. (*See* Compl., Ex. F, *see* ECF 7-6, p. 31 of 40) (listing amounts billed by providers; stating "The medical provider has

---

[2] *See, e.g., Sheppard v. Bank of Am., NA,* 542 F. App'x 789, 791 (11th Cir. 2013) (district court's "consideration of the documents attached to the Complaint . . . did not convert the Bank Defendants' motion to dismiss into a motion for summary judgment, as both the Note and Notice were central to Sheppard's claims and their authenticity was undisputed.").

received $ 0.00.").)  If the providers were paid nothing, that negates any contention that Plaintiff or FHCP supposedly made conditional payments for the amounts Plaintiff demands Allstate must pay.  Count I should be dismissed on this ground as well.

## III.   Plaintiff's Count IV, for "Breach of Contract Pursuant to Section 627.736," also Fails as a Matter of Law.

Plaintiff's "breach of contract" claim also fails as a matter of law.  Plaintiff alleges it is entitled, pursuant to an Allstate PIP insurance policy supposedly covering the "Enrollee," to recover PIP benefits from Allstate.  (Am. Compl., ¶¶ 84-88.)  According to Plaintiff, "Defendant failed to reimburse Plaintiff for the payments made for the insured's medical expenses."  (Am. Compl., ¶¶ 85.)

Notably, however, Plaintiff fails to allege that the policyholder/insured assigned any rights to Plaintiff under any Allstate insurance policy.  Absent any allegation of a valid assignment of rights under that policy, Plaintiff's "breach of contract" claim fails as a matter of law.  As the court in *State Farm Mut. Auto. Ins. Co. v. Pressley*, 28 So. 3d 105, 108-09 (Fla. 1st DCA 2010), explained:  "an entity other than a medical provider may recover PIP benefits for services provided by a provider, *but only pursuant to a valid assignment of benefits*. . . . Unlike [in other] cases, in which the party seeking payment of PIP benefits was acting on behalf of the medical provider under an authorized assignment of benefits, there is no evidence in this case of any assignment of PIP benefits."  *Id.* (emphasis added, citations omitted).  *See also Hartford,* 771 So. 2d at 1212 (absent any showing that insured '"assigned his right to PIP benefits to St. Mary's," St. Mary's "does not have standing to bring suit against Hartford"); *Progressive*, 913 So. 2d at 1285 ("the assignment of PIP benefits is not merely a condition precedent to maintain an action on a claim held by the person or entity who filed the lawsuit.  Rather, it is the basis of the claimant's standing to invoke the processes of the court in the first place.").

Because Plaintiff fails to allege any facts showing it has a valid assignment of rights under any Allstate insurance policy, its "breach of contract" claim is fatally deficient and should be dismissed.

IV.     **Plaintiff's Counts I and III, for "Declaratory Judgment" and "Action for Accounting," Should Be Dismissed Because They Are Duplicative and Fall with Plaintiff's Other Claims.**

Plaintiff's claims for "accounting" and declaratory relief also fail as a matter of law.  The law is well-settled that where a complaint asserts a claim for simple breach of contract, the Plaintiff may not also assert a claim for equitable accounting.  As one court stated, in language equally applicable here:

> [W]here causes of action for both a breach of contract and equitable accounting are asserted simultaneously with respect to the same underlying facts, the plaintiff can only maintain both causes of action by showing that the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them. . . .  Pursuant to these long-standing principles, a claim for equitable accounting should be dismissed where the evidentiary facts alleged in a complaint show neither complexity nor inadequacy of a legal remedy.

*Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 694 F. Supp. 2d 1275, 1279-80 (S.D. Fla. 2010) (footnotes and citations omitted).  *See also Chiron v. Isram Wholesale Tours & Travel Ltd.*, 519 So. 2d 1102, 1103 (Fla. 3d DCA 1988) (affirming dismissal of claim for accounting, and stating "count I of the complaint alleges an uncomplicated oral agreement for short term employment, the terms for compensation, and a breach of the agreement.  Those same facts do not warrant an action for an accounting.").

Here, Plaintiff purports to bring claims for both breach of contract and an equitable accounting.  Yet, Plaintiff fails to allege any facts showing the "accounts between the parties' are of such a complicated nature that only a court of equity can satisfactorily" resolve them.

*Managed Care*, 694 F. Supp. 2d at 1279-80.  Accordingly, Plaintiff's "accounting" claims should be dismissed.

In addition, "[d]eclaratory relief is a procedural device which depends on an underlying substantive cause of action and cannot stand on its own." *Eveillard v. Nationstar Mortgage LLC*, No. 14-CIV-61786, 2015 WL 127893, *9 (S.D. Fla. Jan. 8, 2015), *reconsid. denied*, 2015 WL 1191170 (S.D. Fla. Mar. 16, 2015).  *See also Robb v. Rahi Real Estate Holdings LLC*, No. 10-81474-CIV, 2011 WL 2149941, *8 (S.D. Fla. May 23, 2011) ("The only outstanding claim that has not been dismissed with prejudice, declaratory judgment (Count VI), cannot stand on its own.").   Because all Plaintiff's other claims fail as a matter of law for the reasons discussed above, Plaintiff's claim for declaratory relief necessarily fails as well.

## V.      Additional Considerations Supporting Dismissal.

Count II of the Amended Complaint is titled "Private Cause of Action for Double Damages," and purports to seek damages under the MSP statute for Allstate's alleged failure to pay.   (Am. Compl., p. 17 & ¶¶ 66-76.)   In violation of the *Twombly/Iqbal* pleading requirements, Plaintiff generically asserts FHCP made payments of Medicare benefits for services rendered to the Patient and that Allstate must reimburse Plaintiff for same.  (*Id*.)  The Amended Complaint, however, is devoid of any facts specifying the date such payments were made, to whom the payments were made, how many payments were made, or the amount of each payment made.  Plaintiff asserts only that a total amount of $2,869 was charged.  (*Id.*, ¶ 75.)

Moreover, Plaintiff does not assert it affirmatively and appropriately placed Allstate on notice of any conditional payments.  *See* 42 U.S.C.A. § 1395y(2)(B)(ii) ("If reimbursement is not made to the appropriate Trust Fund before the expiration of the 60-day period *that begins on the date notice of, or information related to, a primary plan's responsibility for such payment or*

*other information is recei*ved, the Secretary may charge interest (beginning with the date on which the notice or other information is received) on the amount of the reimbursement until reimbursement is made (at a rate determined by the Secretary in accordance with regulations of the Secretary of the Treasury applicable to charges for late payments).") (emphasis added).

Nor does the Amended Complaint set forth any facts supporting the allegation Allstate failed to issue any payment/reimbursement.  Such allegations lack specificity to place Allstate on notice of the claims against it, so that Allstate may adequately respond should this matter proceed.  *See, e.g., Reynolds v. Mouridy*, No. 5:10-CV-249-MTT, 2010 WL 4026117, *1 (M.D. Ga. Oct. 13, 2010) ("The Federal Rules employ a notice pleading standard, which requires that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief. . . .  A pleading containing mere 'labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'  *Twombly,* 550 U.S. at 570.  Rather, a plaintiff must assert factual allegations that are 'enough to raise a right to relief above the speculative level.'  *Id.* at 555.  The complaint must 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' *Id.*") (citation and internal quotation omitted).  In violation of *Twombly,* Plaintiff's Amended Complaint allegations here leave Allstate to speculate about the grounds for the relief Plaintiff is seeking.

## CONCLUSION

For all the foregoing reasons, Defendant, Allstate Insurance Company, respectfully requests this Court enter an order dismissing this action, with prejudice and without leave to amend, and granting Allstate such further relief as this Court deems just, proper and equitable.

Respectfully submitted,


By:   /s/  Rachel M. LaMontagne
      Rachel M. LaMontagne
      Florida Bar No. 094692
      E-mail address:
      rlamontagne@shutts.com
      SHUTTS & BOWEN LLP
      Attorneys for Allstate
      201 South Biscayne Blvd., Suite 1500
      Miami, Florida  33131
      Telephone: (305) 347-7367
      Facsimile:  (305) 415-9848


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 31, 2015, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.


John H. Ruiz, Esq.
MSP Recovery Law Firm
5000 S.W. 75th Avenue, Suite 400
Miami, FL 33155
Tel.: (305)614-2222
*E-mail address:*
*serve@lawofficeslaley.com*
*Attorney for Plaintiff*


      /s/  Rachel M. LaMontagne